UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER ROTTER, | ) | |
|     *Plaintiff*, | ) | |
|     v. | ) | No. 1:14-cv-7583 |
| | ) | |
| ELK GROVE VILLAGE, an Illinois Municipal | ) | Judge Robert M. Dow, Jr. |
| Entity; OFFICER JOHN WILLIAMS; and | ) | |
| OFFICER RUSSELL SULLIVAN, | ) | Magistrate Judge Michael T. Mason |
|     *Defendants*, | ) | |
| ─────────────────────────────── | ) | |
| | ) | |
| ELK GROVE VILLAGE, | ) | |
|     *Counter-Plaintiff,* | ) | |
|     v. | ) | |
| | ) | |
| ROGER ROTTER | ) | |
|     *Counter-Defendant.* | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    NOW COMES Plaintiff, ROGER ROTTER ("ROTTER"), by and through his attorneys, and hereby submits, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(b)(2) of the United States District Court for the Northern District of Illinois the following points, arguments, and authorities in opposition to the Motion for Summary Judgment heretofore filed on behalf of all the Defendants ("Defts' MSJ").

**PREFATORY NOTE**

    While Defendants jointly argue that all of Plaintiff ROTTER'S federal claims embodied in his First Amended Complaint ("1st AC") are barred as a matter of law by *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court should note that there are no other bases for summary judgment raised by Defendants OFFICER JOHN WILLIAMS ("OFC. WILLIAMS") or OFFICER RUSSELL SULLIVAN ("OFC. SULLIVAN"). Neither Officer contends there are no genuine material factual

issues regarding their encounter with ROTTER on September 30, 2012. Nor does either Officer raise qualified immunity. Thus, unless the Defendants prevail in their view of the breadth of *Heck v. Humphrey*, the case must proceed to trial at least against the individual Defendant Officers.

## ARGUMENT

**I.        Plaintiff's claims are not barred, as a matter of law, by *Heck v. Humphrey*.**

It is true, as Defendants' Motion and Memorandum (hereinafter "Defts' Memo") point out, that Plaintiff ROTTER pleaded guilty to misdemeanor battery and resisting charges arising out of his September 30, 2012 encounter with OFFICERS WILLIAMS and SULLIVAN. It is also true that ROTTER'S present claims are all, with the exception of Count IV of his First Amended Complaint[1], brought pursuant to 42 U.S.C. §1983. What is not true is that *Heck v. Humphrey* bars those claims. As Plaintiff demonstrates below, Defendants' application of *Heck* and its progeny to this case is incorrect. Thus, Defendants are not entitled to judgment as a matter of law on this particular basis.

In *McCann v. Neilsen*, which the Defendants cite in their Memorandum, the Seventh Circuit observed that "[t]he rule of *Heck v. Humphrey* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann*, 466 F.3d at 621. The Court then went on to explain further:

> … To this end, *Heck* bars a plaintiff from maintaining a §1983 action in situations where "a judgment in favor of the plaintiff *would necessarily imply the invalidity of his conviction or sentence*. …" *Id.* at 487, 114 S. Ct. 2364; *see also Van Gilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006). Conversely, if the civil action, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487, 114 S. Ct. 2364.

---

[1] Count IV is brought under Illinois law, and in particular 745 ILCS 10/9-102, and seeks to have judgment entered against ELK GROVE VILLAGE for any compensatory damages assessed against either of the individual Defendant Officers.

2

> As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se Heck*-barred from maintaining a §1983 action for excessive force stemming from the same confrontation. *Van Gilder*, 435 F.3d at 692. A contrary conclusion, we held in *VanGilder*, would "imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *Id.* We disapproved such a result because it "would open the door to undesirable behavior and gut a large share of the protections provided by §1983. *Id.*

*McCann*, 466 F.3d at 621 (emphasis added).

In our case, a judgment for ROTTER on his excessive force and other §1983 claims would not, contrary to Defendants' position, necessarily imply the invalidity of his misdemeanor convictions. To understand why this is so, it is important to first examine the precise claims ROTTER is pursuing, as framed by his pleading.

ROTTER has alleged, in pertinent part, one count of excessive force against OFC. SULLIVAN under 42 U.S.C. §1983, a second §1983 excessive force count against OFC. WILLIAMS, a §1983 claim against OFC. WILLIAMS for failing to intervene to prevent excessive force committed by OFC. SULLIVAN, and finally a §1983 *Monell* count against ELK GROVE VILLAGE. (See 1st AC, Counts I, II, III, and V.) The Amended Complaint sets forth, in some detail, the events leading up to and constituting the factual basis for ROTTER'S federal claims. (See 1st AC, ¶¶ 8-42.) Nowhere within that span of allegations does ROTTER contend that he *never resisted* either officer or that he *never battered* OFC. SULLIVAN. The only allegations that approach denying that ROTTER did anything that could later result in a criminal charge are those contained in ¶¶ 12 and 31. In ¶12, Plaintiff alleges he was not posing a threat to anyone, causing any disturbance, or doing anything illegal. However, those allegations pertain only to the point in time before OFC. WILLIAMS had even exited his squad car. In ¶31, Plaintiff merely alleges that

3

he was "doing nothing threatening" while he was standing by his car immediately before being approached by OFC. SULLIVAN.

This lack of any allegations that can reasonably be construed as a denial that ROTTER resisted arrest or committed battery is not insignificant, especially when considered against a number of the cases Defendants cite in their Memorandum.

For example, the excerpt Defendants quote from *McCann v. Neilsen* (see Defts' Memo, p.4) begins: "[A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction *if specific factual allegations in the complaint* are necessarily inconsistent with the validity of the conviction…" (Emphasis added.) On appeal from the district court's grant of judgment on the pleadings in the defendant's favor, the Seventh Circuit reversed and remanded, finding that the district court "took an ambiguously worded paragraph in the complaint – one that could be read to avoid the *Heck* bar – and construed it in a manner that favored the defendant." *McCann*, 466 F.3d at 622. The Court of Appeals determined there was "an equally plausible construction that avoids inconsistency with [the plaintiff's] assault and obstruction convictions," and that when read in that way, "[the plaintiff was] not denying his assaultive and obstructive conduct, but is alleging that regardless of what he may have done, the deputy's use of deadly force as a response was not reasonable." *Id.* at 622-23.

Similarly, in our case, ROTTER'S claims are pleaded such that they can be read to avoid inconsistency with his misdemeanor resisting and battery convictions. Like the plaintiff in *McCann*, ROTTER'S pleading does not deny the resisting and battery with which he was charged, but alleges that regardless of what he may have done, the Defendant OFFICER'S use of force in response went beyond what was reasonable under the Fourth Amendment.

*Helman v. Duhaime*, 742 F.3d 760 (7th Cir. 2014), supports this view. The Seventh Circuit there observed that "…in considering whether *Heck* requires dismissal, we must consider the factual basis *of the claim* and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction. To the extent that factual allegations do not do so, [the plaintiff] may proceed under §1983." *Helman*, 742 F.3d at 762 (emphasis added). In our case, it is the factual allegations forming the basis of ROTTER'S claims that must be examined to determine whether *Heck* bars him from proceeding with those claims.

*Helman* cites *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), as Defendants show at page 4 of their Memorandum. But Defendants omit any further discussion of *Evans*, which, as it turns out, lends further support to ROTTER'S view here. In *Evans*, plaintiff had been convicted of attempted murder and resisting arrest. He sued the arresting officers under 42 U.S.C. §1983 for excessive force. The district court granted summary judgment for defendants, concluding that *Heck* barred plaintiff's claim because Evans had asserted that he did not oppose being taken into custody. The Seventh Circuit, however, reversed and remanded, explaining as follows:

> Evans's situation illustrates how a fourth-amendment claim can coexist with a valid conviction. He contends three things: (1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody… Proposition (1) is incompatible with his conviction; any proceedings based on this contention must be stayed or dismissed under *Wallace* or *Heck*. But propositions (2) and (3) are entirely consistent with a conviction for resisting arrest. [Internal cites omitted.] These aspects of the suit can proceed. And if Evans is willing to abandon proposition (1), there would be no need for a stay of any kind.

*Evans*, 603 F.3d at 364. The Court further noted that plaintiff could, if he so chose, "stick to a position that forecloses relief." But the Court did not understand Mr. Evans to be arguing that he

5

was advancing propositions (2) and (3) *if and only if the district court accepts proposition (1).* Thus, the Court concluded that Mr. Evans "is entitled to an opportunity to prove that the defendants used unreasonable force during and after his arrest." *Id.* (Emphasis added.)

Here, ROTTER did not plead his excessive force claims in such a way as to predicate those claims solely on the proposition that he had not resisted or himself committed a misdemeanor battery. Thus, like the plaintiff in *Evans*, he should be entitled to an opportunity to prove that the Defendants used unreasonable force during and after his arrest.

Further, because of ROTTER'S *actual allegations* in his Amended Complaint, Defendants' reliance on *Okoro v. Callaghan* to "resolve" the question between theoretical inquiry (as to whether a plaintiff could plead a cause of action consistent with his conviction) and actual allegation (Defts' Memo, pp. 4-5) is quite beside the point. ROTTER did actually plead his claims in such a way as to avoid *Heck*.

It is noteworthy that *Okoro* was decided in 2003, whereas *Evans*, which cites *Okoro*, was handed down seven years later (and two years before the events giving rise to ROTTER'S claims). The *Evans* Court accepted the notion, first expressed by Circuit Judge Posner in *Okoro*, that plaintiff "is master of his claim and can, if he insists, stick to a position that forecloses relief." See *Evans*, 603 F.3d at 364. That having been said, the Court nonetheless held that the plaintiff in *Evans* could proceed with those aspects of his claim that did not necessarily implicate *Heck*.[2]

Since Defendants cannot and do not show that ROTTER frames any of the §1983 claims contained in his First Amended Complaint so as to necessarily imply that his prior misdemeanor convictions were invalid, they point instead to certain answers given by ROTTER at his deposition

---

[2] Defendants' reliance on the unpublished Order issued in *Wooten v. Law*, 118 Fed.Appx. 66 (2004) as demonstrating the effect of *Heck* and *Okoro* on a claim for excessive force (see Defts' Memo, p.5) fails for the same reason. *Wooten* pre-dated *Evans* by six years. In addition, the plaintiff in *Wooten*, unlike ROTTER, "*pleaded* himself into *Heck*-barred territory." *Wooten*, 118 Fed.Appx. at 69 (emphasis added).

as the basis for their *Heck* challenge. (See Defts' Rule 56.1 Statement of Material Facts, ¶¶ 6,7; Defts' Memo, p.7.) Plaintiff does not dispute that this testimony was given. (See Pltf's Rule 56.1(b)(3) Response, ¶¶ 6,7.) Plaintiff does dispute, however, whether these deposition answers preclude ROTTER, under *Heck*, from further pursuing *any* of his §1983 *claims*.

The primary reason they do not has to do with what Plaintiff *was not asked* at his deposition. Defense counsel never inquired whether ROTTER'S denials were necessarily part and parcel of each and every one of his claims. Further, ROTTER was not asked whether his denials were intended to cover the *entire* period of his encounter with the officers, including the time after he was taken to the ground by OFC. SULLIVAN and was face-down on the ground with both officers over him, during which he was continuously tased by OFC. SULLIVAN, with OFC. WILLIAMS located right alongside and in position to intervene and prevent OFC. SULLIVAN from applying the taser abusively.

As shown earlier, neither OFFICER is arguing at this point that the facts are so one-sided in their favor that they should be granted summary judgment on that alternative basis. And the record discloses genuine material issues as to whether ROTTER was already down and under the OFFICERS' control when OFC. SULLIVAN nonetheless repeatedly tased him.

OFC. WILLIAMS testified that when he responded to the location where OFC. SULLIVAN was in the center of the Real Time Sports parking lot with ROTTER, he saw OFC. SULLIVAN bent over holding ROTTER against a vehicle. (See Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts (hereinafter ("Pltf's SAF"), ¶ 2.) OFC. WILLIAMS noted in his report that he saw ROTTER with a clenched fist attempting to strike OFC. SULLIVAN, at which point OFC. WILLIAMS grabbed one of ROTTER'S arms and attempted to take him into custody. (Pltf's SAF, ¶¶ 3,4.) OFC. SULLIVAN at that point stated he was going to

use his taser, and then fired the taser projectiles into ROTTER. (Pltf's SAF, ¶ 5.) ROTTER'S knees buckled, and he fell to the ground, at first on his side. (Pltf's SAF, ¶ 6.) By this point, ROTTER, who was hearing impaired, was without his hearing aids, which had been knocked out. (Pltf's SAF, ¶¶ 1, 7.)

Once down, ROTTER was lying on the ground still, at which time OFC. WILLIAMS was able to place a handcuff on his left arm. ROTTER had his right arm and hand underneath his body while lying face down. (Pltf's SAF, ¶8.) While ROTTER remained lying on the ground with his right arm underneath himself, OFC. SULLIVAN delivered another taser cycle to ROTTER'S back. (Pltf's SAF, ¶¶ 8,9.) Each "cycle" refers to a five second period that the taser continues to send an electrical impulse after its trigger has been pulled. (Pltf's SAF, ¶10.) Getting tased is painful. A person getting tased cannot move. (Pltf's SAF, ¶10.)[3] Though OFC. WILLIAMS' report only references two such taser deployments before a third officer, Officer Dredge, appeared and was able to place a cuff on ROTTER'S right arm, OFC. WILLIAMS testified that he thought there was more than two times, but did not know exactly how many. (Pltf's SAF, ¶¶ 11,12.)

The taser download printout from OFC. SULLIVAN'S taser shows *eleven* five-second deployments within less than two minutes. (Pltf's SAF, ¶¶ 13, 14.) During the time ROTTER was on the ground, he was screaming or wailing or making some kind of high pitched noise, all of which was recorded on the audio portion of OFC. SULLIVAN'S in-squad video/audio system. (Pltf's SAF, ¶15.)

Facts such as these give rise, at a minimum, to genuine material issues over whether the officers' use of force, particularly with respect to the repeated deployments of a taser against a

---

[3] For a fuller description of the operation of the model X26 taser and its physiological effects upon the person being tased, see *Abbott v. Sangamon County*, 705 F.3d 706, 725-726 (7th Cir. 2013). ROTTER'S account of his own personal experience is consistent with this description. (See ROTTER Dep, pp. 105-106, 110-111.)

prone individual, one of whose hands is cuffed and the other tucked underneath his body, was excessive under the Fourth Amendment. See *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 858, 862-863 (7th Cir. 2010) (court finds evidence demonstrating twelve trigger pulls of taser, despite officer claiming five or six deployments against prone individual, is a key factual dispute not susceptible of resolution on summary judgment). Furthermore, a claim based on this scenario would not be barred by *Heck* since the battery to SULLIVAN that formed the basis for Plaintiff's guilty plea had already occurred, and ROTTER'S hands were not in a position to commit any additional, ongoing battery. See *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005) (plaintiff was not barred by *Heck* because his challenge that defendant used excessive force after plaintiff had hit the defendant does not undermine plaintiff's conviction or punishment for his own acts of aggravated battery.). Furthermore, based on the testimony of OFC. WILLIAMS, there is a genuine issue to be resolved by a jury as to whether ROTTER, in his prone position and with two officers over him, was still "resisting," especially in light of the evidence concerning the effects a taser has on a person, coupled with the number of times ROTTER was subjected to being tased within a short period of time.[4] Finally, as discussed above, even if one aspect of a plaintiff's overall claims may be incompatible with his conviction for resisting, if other aspects of his claims are consistent with his conviction, those aspects of the suit must be allowed to proceed. *Evans*, 603 F.3d at 364.

      Accordingly, ROTTER'S §1983 claims for excessive force and failure to intervene are not barred in their entirety under *Heck v. Humphrey*, as Defendants' Motion contends. To the extent Defendants predicate their Motion on *Heck*, it should be denied.

---

[4] In this regard, ROTTER'S claims differ from those at issue in *Tolliver v. City of Chicago*, 820 F.3d 237 (7th Cir. 2016), which Defendants discuss at page 6 of their Memorandum. Unlike Mr. Tolliver, ROTTER'S suit does not rest on a version of the event that *completely negates* the basis for his misdemeanor conviction.

**II. Defendant ELK GROVE VILLAGE is not entitled to judgment as a matter of law on the entirety of the liability portion of its Counterclaim because its present motion fails to demonstrate undisputed facts bearing upon several essential elements of its claim.**

The second argument raised by Defendant ELK GROVE VILLAGE is somewhat miss-titled. The VILLAGE calls it, in essence, *issue* preclusion, focusing on Plaintiff ROTTER'S previous battery guilty plea. But the ultimate finding the VILLAGE requests is judgment as a matter of law as to the entirety of the liability claim it is asserting in its Counterclaim.

The VILLAGE'S argument must be rejected for two principal reasons. First, there are several elements necessarily intertwined with the VILLAGE'S claim that were not decided by the state court in conjunction with that plea, namely (1) the nature and extent of the injuries claimed by OFC. SULLIVAN, and (2) proximate cause. Second, the Defendants' present Motion does not demonstrate any undisputed material facts needed to support summary judgment in its favor, keeping those previously undetermined issues in mind. Consequently, Defendant's across-the-board application of collateral estoppel *as a basis for imposing judgment* at this juncture must be rejected.

The minimum threshold requirements for the application of collateral estoppel, as set forth in *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 398 N.E.2d 9 (1979), are: (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Id. at 7 (emphasis added).

In addition, for purposes of addressing the VILLAGE'S present claim, Fed. R. Civ. P. 56 requires the VILLAGE, as the moving party, not only to inform the court of the basis of its motion but also to identify "those portions of the 'pleadings, deposition, answers to interrogatories, and

admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 377, 323 (1986).

Here, there was never any determination made by the state court in conjunction with the battery charge against ROTTER regarding the nature or the extent of any of the injuries OFC. SULLIVAN contends he sustained. Further, since there was no consideration given to that particular issue by the court, there was likewise no consideration given, or decision made, as to whether any of ROTTER'S conduct proximately caused those injuries. The Defendants' written submissions to this Court in connection with the present motion fail to demonstrate otherwise.

While ELK GROVE VILLAGE'S Counterclaim may contain a somewhat more precise description of OFC. SULLIVAN'S injury (See Counterclaim, Doc. # 26, ¶ 10), and may allege the existence of a "direct result" or a "direct and proximate result" between that injury and ROTTER'S conduct (Doc. # 26, ¶¶ 11, 24, 33), the VILLAGE cannot rest or rely upon its own allegations, or merely assume that they are sufficient to support summary judgment in its favor. It must come forward and present to the court undisputed facts establishing each and every element of its claim. The VILLAGE has not done so.

Given the elements the VILLAGE has pleaded, coupled with the fact that the state court never made any specific rulings or determinations as to those elements, the issue actually decided in the state court was not identical with the one presented in the present civil action. Thus, there can be no preclusive effect as to those elements. Further, since the VILLAGE has failed to come forward with the necessary undisputed facts bearing upon those elements, summary judgment on the overall liability component of the VILLAGE'S Counterclaim would be improper. Genuine material issues of fact remain for the jury to decide with respect to the nature and extent of OFC. SULLIVAN'S claimed injuries, as well as the question whether ROTTER'S actions proximately

caused *those* injuries. *Mack v. Ford Motor Co.*, 283 Ill. App.3d 52, 57, 669 N.E.2d 608, 612 (1st Dist. 1996)(issue of proximate cause is ordinarily a question for the jury to decide).

Thus, the Defendant VILLAGE'S request for summary judgment as to the entire liability component of its Counterclaim must be denied.

**III. The deprivation of ROTTER'S constitutional rights was caused, in part, by ELK GROVE VILLAGE'S express policy addressing an officer's taser use. As a result, ELK GROVE VILLAGE can be held liable under *Monell*.**

During the course of discovery in this matter, the Defendant VILLAGE produced a copy of its written use of force policy, which includes express provisions addressing an officer's use of a taser. (Pltf's SAF, ¶16.) That written policy includes the following statement: "Mere passive resistance does not permit the use of the Taser absent words or actions showing intent to actively resist or cause harm to self, the officer(s) or others." (Pltf's SAF, ¶17.) The policy does not, however, provide any definition or explanation of the phrase "mere passive resistance," and there are no other ELK GROVE VILLAGE policies or general orders that provide such a definition. (Pltf's SAF, ¶¶ 18-19.) Similarly, it does not include any explanation, delimitation, or clarification of the phrase "words or actions showing intent to actively resist or cause harm." (Pltf's SAF, ¶18.) Finally, it does not provide any directive or guidance to ELK GROVE VILLAGE officers as to when an officer who may have been initially justified in resorting to taser use in a given situation must discontinue using such force. It basically leaves to the officer the full and unbridled discretion to continue using a taser even when circumstances involved in a given incident have changed sufficiently such that taser use is no longer reasonable or necessary. As such, the policy invites and encourages constitutional violations.

That is precisely the situation posed by this case, in light of the factual discrepancies in the evidence with regard to whether OFFICERS WILLIAMS and SULLIVAN already had Plaintiff ROTTER down on the ground and sufficiently under their control at the time OFC. SULLIVAN continued to repeatedly fire his taser into ROTTER'S prone body.

It was well established prior to September, 2012 that police officers cannot continue to use force once a suspect is subdued. *Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016), citing *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013). It was also well-established in this circuit that police officers could not use significant force on non-resisting or passively resisting suspects. *Id.* The Court of Appeals has also recognized that the use of a taser falls "somewhere in the middle of the nonlethal-force spectrum," and as such is *not an insignificant* quantum of force. *Abbott*, 705 F.3d at 726, citing *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In addition, the Seventh Circuit has explicitly rejected the argument that if an officer's first use of a taser was reasonable, "all other uses were necessarily appropriate because once an officer is justified in using a particular level of force to effectuate an arrest, he can continue to use that same level of force until the suspect is apprehended." *Cyrus*, 624 F.3d at 863. Instead, "[f]orce is reasonable only when exercised in proportion to the threat posed … and as the threat changes, so too should the degree of force … It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness." *Id.*; see also *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated").

The constitutional problem with ELK GROVE VILLAGE'S policy, here is that while it allows officers to use tasers, it provides no directive or guidance as to when the officer must stop using it. Under the wording of the policy, if a person had, at one point during the course of an

encounter with an officer, used words or exhibited actions "showing intent to actively resist," the officer could, pursuant to the policy, continue using his taser throughout the entirety of the encounter even well after those words were spoken or actions taken. In other words, officers are left free to determine, even in situations that have deescalated, when to stop the deployment. Pursuant to ELK GROVE VILLAGE'S policy, its officers could keep firing their taser based on the rationale that was squarely rejected by the Court of Appeals in *Cyrus* and under circumstances that would run afoul of the constitutional limitations imposed by the Court not only in *Cyrus*, but also *Abbott*, *Becker*, and the cases cited therein.

Thus, while discovery in this case yielded insufficient evidence upon which to flesh out the failure-to-train and failure-to-discipline species of *Monell* liability that the Plaintiff had initially framed in his pleading, the evidence does give rise to genuine material issues over whether ELK GROVE VILLAGE'S express policy governing use of force, and in particular use of tasers, was a moving force behind the constitutional deprivations suffered by ROGER ROTTER at the hands of OFFICERS WILLIAMS and SULLIVAN, since the VILLAGE determined that OFC. SULLIVAN *had acted in accordance with that policy*. (Pltf's SAF, ¶¶ 29-30.) For that reason, the VILLAGE'S request for judgment as a matter of law on ROTTER'S *Monell* claim should be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and based on the points and authorities discussed above, Plaintiff ROGER ROTTER respectfully requests this Honorable Court to deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted,

*/s/ Martin A. Dolan*

One of the Attorneys for Plaintiff Roger Rotter

Martin A. Dolan, Esq.
Karen Munoz, Esq.
Dolan Law Offices, P.C.
10 South LaSalle Street, Suite 3702
Chicago, IL 60603
312-676-7600
mdolan@dolanlegal.com


Gregory E. Rogus, Esq.
Gregory E. Rogus P.C.
28 Lakeside Lane
North Barrington, IL 60010
331-223-1804
grogus@grbarrister.com

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record for the Plaintiff, Roger Rotter, hereby certifies that on December 20, 2016, the foregoing document (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment) was served on the following attorneys via the District Court's ECF filing system:

**William W. Kurnik, Esq.**
Knight, Hope, Kurnik & Knight, Ltd.
5600 North River Road
Suite 600
Rosemont, IL 60018
Bkurnik@khkklaw.com

**Amanda Marie Zdarsky, Esq.**
Knight, Hope, Kurnik & Knight, Ltd.
5600 North River Road
Suite 600
Rosemont, IL 60018
ahillmann@khkklaw.com

Signed:
　　　　　*/s/Martin A. Dolan*
One of the Attorneys for Plaintiff