# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER ROTTER, | ) |
| Plaintiff / Counter-Defendant, | ) |
| v. | ) Case No. 14-cv-7583 |
| ELK GROVE VILLAGE, | ) Judge Robert M. Dow, Jr. |
| Defendant / Counter-Plaintiff, | ) |
| and | ) |
| JOHN WILLIAMS, and RUSSELL SULLIVAN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roger Rotter brings this civil rights action under 42 U.S.C. § 1983 against Defendants Elk Grove Village ("the Village"), Officer John Williams, and Officer Russell Sullivan alleging excessive force and *Monell* liability. The Village brings counterclaims against Plaintiff for battery and negligence. Currently before Court is Defendants' motion for summary judgment [43] on Plaintiff's claims and on the Village's battery counterclaim. For the reasons stated below, Defendants' motion for summary judgment [43] is granted in part and denied in part. This case is set for further status hearing on September 7, 2017 at 9:00 a.m.

I.   **Background**

The following facts are drawn primarily from the parties' Local Rule 56.1 statements, [45], [46], [48], and [50], and attached exhibits. On September 30, 2012, Plaintiff, who is hearing impaired, was arrested in Elk Grove Village, Illinois by Officers Sullivan and Williams. [48, at ¶ 1; 45, at ¶ 1.] The details of the arrest are as follows: Officer Williams grabbed one of

1

Plaintiff's arms and attempted to take him into custody, but was unable to do so. [50, at ¶ 4.] Officer Sullivan then stated that he was going to use his taser and deployed his taser in projectile mode. [*Id.* at ¶ 5.] Plaintiff's knees buckled, and he fell to the ground, landing initially on his side. [*Id.* at ¶ 6.] By this point, Plaintiff's hearing aids had been knocked out. [*Id.* at ¶ 7.] According to Plaintiff, he was then "lying on the ground still, at which time Officer Williams was able to cuff his left arm," and his right arm and right hand were underneath his body as he lay face down. [*Id.* at ¶ 8.] According to Defendants, "[Plaintiff's] legs were moving and arm flailing back and forth," "[t]he officers were not able to get [his] arm under control," and Plaintiff "was rolling around side-to-side, trying to break free from the officers." [50, at ¶ 8.] During the time Plaintiff was on the ground with Officers Williams and Sullivan trying to control him, Plaintiff was either screaming or wailing or making some kind of high-pitched noise. [48, at ¶ 15.] In his report, Officer Williams indicated that after a second application of the taser by Officer Sullivan, another officer arrived and was able to place a handcuff on Plaintiff's right arm, at which time Officer Williams connected that handcuff to the one on Plaintiff's left arm. [*Id.*, at ¶ 11.]

Though he only noted two instances of Officer Sullivan's taser use in his report, Officer Williams testified that he thought Officer Sullivan deployed the taser more than two times, but he did not know how many times. [*Id.* at ¶ 12.] Tasers have an internal mechanism that records and stores data regarding the taser's use, including the number of times a taser is deployed on a particular day, data regarding the time at which a deployment was made, and data regarding the duration of any deployment. [*Id.* at ¶ 13.] The data from the taser used by Officer Sullivan on the day in question shows eleven five-second deployments of that taser within less than two minutes. [*Id.* at ¶ 14.]

2

In February of 2013, Plaintiff was indicted for two offenses related to the September 30, 2012 incident: (1) an aggravated battery against Officer Sullivan when he struck Officer Sullivan about the face and body while Officer Sullivan was in the course of his duties as a police officer, and (2) resisting a police officer when he knowingly resisted Officer Sullivan while Officer Sullivan was in the course of his duties as a police officer. [46, at ¶ 2.] Pursuant to a plea agreement, those counts were reduced to a class A misdemeanor battery and a class A misdemeanor resisting a peace officer. [*Id.* at ¶ 3.] For purposes of the guilty plea, the parties stipulated the following factual basis:

> If this matter were to proceed to trial, the State would present the testimony of Officer Williams and Officer Sullivan of the Elk Grove Village Police Department.
>
> Through their testimony, the evidence would show that both officers were working on September 30th of 2012, that both officers were in full uniform, and on that date, Officer Williams was in the area of 1120 West Devon Avenue in Elk Grove Village, Cook County Illinois.
>
> When he was at that location, [Plaintiff], who would be identified in open court, was seen outside of that location. Officer Williams approached [Plaintiff] because [Plaintiff] had his hands over his face. Officer Williams asked [Plaintiff] if he was okay. [Plaintiff] did not response. After several attempts, Officer Williams touched [Plaintiff]'s hands, which were still on his face. [Plaintiff] at that time shoved Officer Williams' hands away in a forceful manner.
>
> [Plaintiff] was secured by Officer Williams while Officer Williams called for an assist unit. [Plaintiff] was able to break free from Officer Williams' security and began to run through the parking lot.
>
> At that time Officer Sullivan responded to the scene, that [sic] he did locate [Plaintiff] within the parking lot of that location. As Officer Sullivan attempted to take [Plaintiff] into custody, [Plaintiff] began to fight with the officer, at which time [Plaintiff] struck Officer Sullivan several times about the face and body. [Plaintiff] resisted Officer Sullivan's attempts in placing handcuffs on him. Another officer arrived on scene, at which point the defendant was able to be handcuffed.

[*Id.* at ¶ 4.]

On September 29, 2014, Plaintiff brought suit alleging excessive force and *Monell* liability. [1.] The Village filed counterclaims against Plaintiff for battery of Officer Sullivan and negligence. Defendants filed a motion for summary judgment, which is currently before the Court.

**II.     Legal Standard**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). However, the Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendants make three arguments in their motion for summary judgment. First, they argue that Plaintiff's claimed are barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Second, the Village argues that it is entitled to a determination that Plaintiff is liable for battery because Plaintiff's guilty plea precludes him from denying that he battered Officer Sullivan. Third, the Village argues that it is entitled to summary judgment on the *Monell* claim because Plaintiff cannot present evidence of any custom, policy, or practice that caused an alleged violation of his constitutional rights. The Court will address each argument in turn.

#### A. *Heck v. Humphrey*

Defendants argue that Plaintiff's claimed are barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), because Plaintiff's testimony and theory of the case are inconsistent with his criminal convictions. In *Heck*, the Supreme Court held that a plaintiff in a civil rights action may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless the conviction has already been invalidated. 512 U.S. 477, 486–87; see also *Moore v. Mahone*, 652

5

F.3d 722, 723 (7th Cir. 2011) ("The *Heck* rule is analogous to collateral estoppel: an issue determined with finality in a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case."); *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) ("*Heck* holds that before a § 1983 plaintiff may recover damages for alleged harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus." (quoting *Heck*, 512 U.S. at 486–87)). The *Heck* doctrine is grounded in the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484. The rule is intended to prevent collateral attacks on convictions through civil suits. *VanGilder*, 435 F.3d at 691; see also *Norris v. Baikie*, 2017 WL 395699, at *3 (N.D. Ill. Jan. 30, 2017).

Defendants argue that in bringing this § 1983 lawsuit, Plaintiff gave testimony that necessarily implies the invalidity of his criminal convictions. Plaintiff pled guilty to a battery of Officer Sullivan, admitted that he struck Officer Sullivan about the face and body, and pled guilty to knowingly resisting the performance of Officer Sullivan while Officer Sullivan was in the course of his duties as police officer. Yet in his deposition, Plaintiff testified that he never hit Officer Sullivan and never resisted arrest. [46, at ¶ 6.] Specifically, Plaintiff testified:

> I pled guilty to misdemeanor charge of hitting a police officer, *but I never hit him*. I had no choice because otherwise I had a chance to be convicted of a felony. And the judge treated me and my lawyer Marty Dolan unfairly. And the only evidence the prosecution had was the officer's testimony against mine. And she said on the stand that she believed him—his testimony and not mine. So I had no choice because I still want to be able to work and I didn't want a felony conviction.

6

[45, Exhibit C (Plaintiff's Deposition), at 8:6–16 (emphasis added).] Plaintiff also denied striking Officer Sullivan about the arms and head, stating "I never did that, though." [46, at ¶ 6; 45, Exhibit C, at 10:16–20.] He testified that he "never resisted arrest," [46, at ¶ 7], and that he "never hit [the officers]," [*id.*, at ¶ 6]. Plaintiff further testified as follows:

> Q: You say that you did not do anything to resist police officers, is that correct?
> A: Yeah, I did nothing to resist the police officers.
> Q: Didn't do anything to prevent an officer from handcuffing you?
> A: No.
> Q: Didn't do anything to prevent officers from putting your arms behind your back, correct?
> A: No.
> Q: Is that correct?
> A: Yes.

[*Id.* at ¶ 7.] Defendants contend that since these allegations in Plaintiff's deposition testimony are inconsistent with Plaintiff's criminal convictions, *Heck* bars this civil suit. Plaintiff, for his part, does not dispute that this testimony was given, but rather argues that even if one aspect of his claims may be incompatible with his convictions, if other aspects of his claims are consistent with his convictions, those aspects of the suit must be allowed to proceed, citing *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010).

As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer is not *per se Heck*-barred from maintaining a § 1983 claim for excessive force. *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). As the Seventh Circuit has explained, a contrary conclusion would "imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder*, 435 F.3d at 692. However, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if [plaintiff's] specific factual

7

allegations [ ] are necessarily inconsistent with the validity of the conviction." *McCann*, 466 F.3d at 62.

The Seventh Circuit has articulated an additional gloss on the *Heck* analysis. In *Gilbert v. Cook*, the Seventh Circuit concluded that a plaintiff's confession to his own offense is not a precondition to a civil remedy against public officials who respond with excessive force. 512 F.3d 899, 901–02 (7th Cir. 2008). Rather, the plaintiff could remain "agnostic" in his civil case about the findings in his criminal case. *Id.* In reversing the district court and remanding the case for a new trial, the court explained:

> Instead of insisting that [the plaintiff] confess in open court to striking a guard, the [district] judge should have implemented *Heck* * * * through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence. It would have sufficed to tell the jurors that [the plaintiff] struck the first blow during the fracas [ ], that any statements to the contrary by [the plaintiff] (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner.

*Id.* at 902. A few years later, in *Evans*, 603 F.3d at 364, the Seventh Circuit "extended the holding of *Gilbert* to a case in which the plaintiff's civil rights complaint, en route to alleging excessive force, denied that he had resisted arrest, though he had been convicted of that crime." *Moore*, 652 F.3d at, 723. The plaintiff in *Evans* contended three things: "(1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody." 603 F.3d at 364. The Seventh Circuit explained that it did not understand the plaintiff "to assert that he is advancing propositions (2) and (3) if and only if the district court accepts proposition (1)." *Id.* Rather, the plaintiff's briefs informed the Court that he was willing to proceed on proposition (3) alone. *Id.* Thus, the Seventh Circuit held that on remand, the district court should simply disregard

8

proposition (1), which was incompatible with the plaintiff's conviction, and permit the plaintiff to proceed with propositions (2) and (3), which were "entirely consistent with a conviction for resisting arrest." *Id.*

Applying that controlling law to the case at hand, the Court concludes that it must disregard Plaintiff's allegations and testimony that are inconsistent with his guilty plea but permit Plaintiff to proceed with his remaining claims. To be sure, a plaintiff is "the master of his ground" and can, if he insists, stick to a position that forecloses relief. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003); *Evans*, 603 F.3d at 364. However, as in *Evans*, the Court does not understand Plaintiff to assert that he only intends on advancing his excessive force claim if and only if the Court accepts his testimony that he did not resist arrest or hit Officer Sullivan. Rather, Plaintiff indicates in his response brief his position that regardless of what he may have done, the Defendant Officers' use of force in response went beyond what is reasonable under the Fourth Amendment. [47, at 4.] Plaintiff further indicates that his excessive force claims are not predicated on the proposition that he had not resisted or committed a misdemeanor battery, and he contends that "like the plaintiff in *Evans*, he should be entitled to an opportunity to prove that the Defendants used unreasonable force during and after his arrest." [See *id.* at 6.] Finally, Plaintiff argues that even if one aspect of his claims may be incompatible with his conviction for resisting, if other aspects of his claims are consistent with his conviction, those aspects of the suit must be allowed to proceed, citing *Evans*, 603 F.3d at 364. [*Id.* at 9.]

Thus, this case is unlike those brought by plaintiffs who voluntarily steer the action into *Heck* territory with their steadfast insistence on maintaining positions incompatible with their criminal convictions. Defendants' reliance on *Okoro*, 324 F.3d at 489–90, and *Tolliver v. City of Chicago*, 820 F.3d 237, 243–44 (7th Cir. 2016), is unconvincing. In *Okoro*, the plaintiff was

9

convicted of drug violations and later brought a civil suit against federal and state officers seeking the return of gems and cash that he claimed the officers had seized while searching his home. 324 F.3d at 489. The Seventh Circuit noted that it was theoretically possible for the plaintiff to have been guilty of the drug violations yet also have been the victim of a theft by the arresting officers. *Id.* The plaintiff could have argued that the defendants had taken both drugs and gems, or he could have argued that they took the gems and not say anything about the drugs. *Id.* at 490. However, he instead "adhered steadfastly to his position that there were no drugs, that he was framed" and in so arguing, he was making an impermissible collateral attack on his drug conviction. *Id.* In short, since the plaintiff was challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed, his claim was barred by *Heck*. *Id.*

In *Tolliver*, the plaintiff had been convicted of aggravated battery to a peace officer under Illinois law, which encompasses intentionally or knowingly, voluntarily, causing bodily harm to the victim. 820 F.3d at 242. Plaintiff later brought a § 1983 excessive force claim, arguing that the police officers employed deadly force against him without provocation. *Id.* at 239. The Seventh Circuit held that his civil suit was barred by *Heck*, explaining that if the finder of fact were to accept the plaintiff's version of the events—that "the officers shot at him as he sat impassively in his car, posing no threat to the officers"—then he could not be guilty of aggravated battery because he did not act intentionally. *Id.* at 243. The plaintiff "could have brought a suit for excessive force that occurred after the crime was complete." *Id.* at 244. The Seventh Circuit explained that if the plaintiff "had conceded that he voluntarily and intentionally or knowingly drove towards the officers, or if [he] had even remained agnostic on who struck the first blow, he could have brought a claim that the officers' response to firing fourteen bullets at

him constituted excessive force and that claim would not be barred by *Heck*." *Id.* But the plaintiff's version of the events necessarily implied the invalidity of his conviction, and thus *Heck* barred his civil suit. *Id.*

Unlike the plaintiffs in *Okoro* and *Tolliver*, the Plaintiff in this case does not adhere to a position incompatible with his guilty plea; rather, he made it clear in his response brief that he is amenable to the Court disregarding his allegations and testimony that are inconsistent with his guilty plea and permitting him to proceed with his remaining claims. Therefore, the Court denies Defendants' motion for summary judgment based on *Heck*, 512 U.S. 477, 486–87. See *Elcock v. Whitecotton*, 434 Fed. App'x 541, 543 (7th Cir. 2011) (holding that on remand, the district court "should either disregard portions of the complaint that deny [the plaintiff's] misconduct, or direct [the plaintiff] to file an amended complaint that omits nay impermissible allegations"); *Hemphill v. Hopkins*, 2011 WL 6155967, at *3 (N.D. Ill. Dec. 12, 2011) (although plaintiff denied the facts underlying his battery convictions, he also contended that no matter what sparked the incident and regardless of whether he kicked an officer, the officer responded with excessive force, which "makes this case like *Evans*, [ ] and *Gilbert*, where *Heck* was held not to apply, and unlike *Okoro*"); cf. *Boothe v. Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 798 (N.D. Ill. 2016) (explaining that since the plaintiff claimed that defendant used an excessive amount of force even assuming she has earlier resisted arrest, plaintiff's claim is not necessarily inconsistent with the resisting arrest conviction and is thus not barred by *Heck*).

### B. Battery Counterclaim

The Village argues that because Plaintiff pled guilty to the misdemeanor of battery against Officer Sullivan, the Village is entitled to summary judgment on the liability portion of its tortious battery counterclaim and that it should only be required to prove damages. Under

11

Illinois law, a person commits the crime of battery, a class A misdemeanor, "if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *United States v. Aviles-Solarzano*, 623 F.3d 470, 472 (7th Cir. 2010) (quoting 720 ILCS 5/12-3(a)) (internal quotation marks omitted). The tort of battery, under Illinois law, is "the willful, unauthorized touching of the person of another or a successful attempt to commit violence on the person of another." *Jenkins v. E. St. Louis Hous. Auth.*, 863 F. Supp. 2d 785, 792 (S.D. Ill. 2012)

The Court applies Illinois law to determine the preclusive effect of Plaintiff's battery guilty plea and conviction. See *Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013). In *Wells*, the Seventh Circuit assessed whether under Illinois law, a prior guilty plea provides conclusive evidence of the underlying facts in the plea. *Id*. at 763. The court concluded that Illinois law does not have a consistent, general practice regarding the preclusive effect of guilty pleas, aside from the traditional doctrines of preclusion. *Id.* This Court will therefore focus its analysis on Illinois preclusion law.

In Illinois, a litigant is estopped from raising an issue in a collateral proceeding when the following factors are met: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit. *Id.* (citation and internal quotation marks omitted). Here, Plaintiff is the party against whom the estoppel is asserted, and he clearly was a party to his criminal case—the prior adjudication. Additionally, whether Plaintiff battered Officer Sullivan was actually litigated and decided on the merits in Plaintiff's criminal case. See *Johnson v. Reiter*, 2015 WL 6674531, at *7 (N.D. Ill.

Oct. 30, 2015) ("To the extent that [the plaintiff] is arguing that the gun pointing issue was not litigated and decided on the merits since he pled guilty, that contention is similarly unavailing. Collateral estoppel does not attach only if an individual goes to trial in an underlying criminal case and is found guilty. Instead, it can be based on a plea agreement."); *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977) (explaining that under Illinois law, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that defendant engaged in criminal acts for which he was convicted).

Next, the issue of battery was necessary to the criminal court's judgment. Cf. *Wells*, 707 F.3d at 761–62 (issue of whether plaintiff pointed a gun at the officer was not necessary to the disposition of his criminal case because there were two alternative factual bases that could have supported his guilty plea; the plaintiff had either discharged his gun in the air or pointed it at the officer, and either action taken in isolation would have supported his guilty plea for reckless conduct). Finally, the issue decided in Plaintiff's criminal case is identical to the issue in the Village's tortious battery claim. See *Smith v. Sheahan*, 959 F. Supp. 841, 846 (N.D. Ill. 1997) (explaining that the criminal offense of battery closely tracks the tort of battery under Illinois law, and thus a person cannot commit the crime of battery without also committing the tort of battery).

Plaintiff argues that summary judgment is not proper because the state court battery conviction did not determine the nature and extent of the injuries claimed by Officer Sullivan or whether any of Plaintiff's conduct proximately caused those injuries. However, this argument misses the mark, as these are issues relevant to the damages calculation and not to liability. See *Smith*, 959 F. Supp. at 847 (granting plaintiff's motion for judgment on the pleadings on the ground that defendant's criminal conviction for battery prevented him from denying facts

13

necessary to hold him liable for tortious battery claim, and specifying that "[t]he present ruling only concerns liability" and that "[n]o issue is resolved regarding damages"). Thus, the Court concludes that the Village is entitled to summary judgment on the liability portion of its tortious battery claim, and this matter will be set for a prove up on damages in due course. See *Czajkowski v. City of Chicago*, 810 F. Supp. 1428, 1433–34 (N.D. Ill. 1992) (in civil case alleging battery, defendant was collaterally estopped from disputing that he had scratched plaintiff with his keys based on his criminal conviction for battery based on the same facts); *Cook Cty. v. Lynch*, 560 F. Supp. 136, 140 (N.D. Ill. 1982) ("It is well-established in [the Seventh Circuit] that collateral estoppel may compel a grant of summary judgment as to the factual issues resolved by the earlier judgment.").

### C. *Monell* Liability

Finally, the Village moves for summary judgment on Plaintiff's *Monell* claim. Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights. 42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011). A municipality can be held liable under § 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy," causes the constitutional deprivation. *Monell v. Department of Social Serv.*, 436 U.S. 658, 694 (1978). "A municipality may not be held liable under § 1983 on a respondeat superior theory." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001) (citing *Monell*, 436 U.S. at 690). To state a claim for municipal liability, a plaintiff must allege that the violation of his rights was caused by "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Id.*

In his complaint, Plaintiff advanced two theories of liability against the Village under *Monell*: (1) that the actions of the individual officers were "undertaken pursuant to the policy, custom, and practice of Defendant [the Village] whereby it failed to adequately train its police officers, including [Officers Sullivan and Williams], on the proper use of force, including the use of tasers, especially when dealing with persons having physical or mental impairments, disabilities, or conditions of ill being," and (2) that the Village exhibited "deliberate indifference to the rights of persons having physical or mental impairments/disabilities to be free from unreasonable seizure at the hands of Elk Grove officers by failing to adequately discipline officers committing similar misconduct." [1, at ¶¶ 52–53]. The Village moved for summary judgment, arguing that Plaintiff cannot provide evidence to support either theory. [44, at 9.] Plaintiff agrees, conceding in his summary judgment response brief that "discovery in this case yielded insufficient evidence upon which to flesh out the failure-to-train and failure-to-discipline species of *Monell* liability that the Plaintiff had initially framed in his pleading." [47, at 14.]

However, Plaintiff attempts to advance an entirely new theory of *Monell* liability in his summary judgment response brief, arguing that the Village's express policy on the use of force caused a violation of his constitutional rights. Plaintiff bases this new argument on the Village's written policy on the use of force, which states: "Mere passive resistance does not permit the use of the Taser absent words or actions showing intent to actively resists or cause harm to self, the officer[s] or others." [48, at ¶ 17.] According to Plaintiff, this policy "invites and encourages constitutional violations" because it does not provide any direction or guidance to officers "as to when an officer who may have been initially justified in resorting to taser use in a given situation must discontinue using such force." [47, at 12.]

15

Plaintiff's attempt to advance a new theory of *Monell* liability in his summary judgment response brief is an impermissible tactic. The Seventh Circuit has held that claims and theories of relief that are made in response to a motion for summary judgment and not brought in the complaint are waived. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (citation and internal quotation marks omitted). Since Plaintiff did not plead his express policy theory of *Monell* liability in his complaint, he did not provide the Village with the fair notice required by the federal pleading rules. See *id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Further, Plaintiff cannot his amend his complaint through arguments in his summary judgment response brief. *Id.* (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)) (internal quotation marks omitted).

Thus, the Village's motion for summary judgment on the *Monell* claim is granted. See *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 813–14 (7th Cir. 2011) (affirming the district court's refusal to consider a new theory of discrimination raised for the first time in opposition to summary judgment and explaining that "[i]t is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion"); *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1314 n.11 (7th Cir. 1987) (affirming the district court's rejection of a theory raised for the first time in opposition to summary judgment because "Plaintiffs' complaint did not give fair warning of the theory" to the defendants).

IV. **Conclusion**

For the reasons stated above, Defendants' motion for summary judgment [43] is granted in part and denied in part. This case is set for further status hearing on September 7, 2017 at 9:00 a.m.

Dated: August 14, 2017   _____
Robert M. Dow, Jr.
United States District Judge